public interest and the wholesome administration of the law. It will not answer this view to say, that the law presumes all men honest, that the law will not presume that a man will commit a fraud or violate a law. It is enough to say that good legislation will not place a man under temptations to commit a wrong, which experience shows the mass of mankind have not the virtue to resist. It is true, we must submit to the law as we find it; but I think it clear, that if the bankruptcy act will bear the construction contended for, it ought to be adopted.

Upon the question then of the true construction of the act, it would seem, that congress must have intended that the costs and expenses of the bankrupt in his defense, and other proceedings should be paid out of the proceeds of his estate. A court will be reluctant to hold, that the law making power while expressly providing, that a party may appear in court and defend himself by the aid of counsel and witnesses, intended in the same act to deprive him of all the means of doing so. The fact, that no provision is made for withholding from the assets to be handed over to the assignee sufficient to pay these costs and expenses, warrants us in looking sharply to the act to find from what source it was intended, that such costs and expenses should be paid. We find in section 28, a provision for paying out of the fund "the fees, costs and expenses of suits and the several proceedings in bankruptcy under this act." This language would seem to be broad enough to cover the case before us. The words "fees, costs, and expenses" are not limited to the side of the creditors or the assignee, nor yet to the officers of the court. It is the daily practice of allowing the counsel for the petitioning creditor to be paid out of the fund for his services in the bankruptcy court. On what express words of the act are similar fees for similar services denied to the counsel for the bankrupt? Certainly none. By whatever argument these words of the act are made to embrace the compensation of counsel for the petitioning creditor the same argument will apply a fortiori to the compensation of counsel for the bankrupt.

I submitted the question herein presented to this court in 1868, in the Case of Heirschberg [Case No. 6,329]. In that case, the bankrupts' attorneys had not thought it right to take from the funds of the bankrupts their compensation in advance for filing his petition, &c., but had come in after the estate had gone into the hands of the assignee and asked to be paid from the fund. I then submitted to the court as a reason for allowing it, that "the funds from which the solicitor is paid must come from what should be the assets of the bankrupt, or from his future earnings. In pursuing the course here pursued, the solicitor submits

the amount of his compensation to the court under the eye of the creditors. In the course ordinarily pursued, he obtains his compensation from the same fund, the amount being measured by the good feelings of the bankrupt, and under some temptation to give him a larger sum than the creditors would sanction, or the court might think a just compensation. If the act will bear this construction, it would seem to tend to a better practice than that which it is believed now generally prevails." I recur to these remarks now only to say that the experience of three years has only deepened the impression then expressed—and since the Case of Comstock [Case No. 3,074], in which one of our ablest judges has taken the same view here urged, I have thought it right to submit the question again, asking for a careful reconsideration of the question. Should the court think the views here expressed, well taken, I recommend that an order be entered, allowing the claimant the sum of $250, which I think would be a fair compensation for the services which would seem to come under provisions of the act, upon the principle of construction above contended for. Respectfully submitted.

BLATCHFORD, District Judge. On evidence and a certificate bringing this case within the decision in Re Montgomery [Id. 9,726], I should follow that decision.

NOTE. The decision in the Case of Montgomery, above referred to, is as follows, Blatchford, District Judge: "If the assignee shall, in writing, approve of the payment of this bill out of the funds of this estate on the grounds set forth in the petition of Mr. Olney, and in the certificate of the register, and of the amount of the charges, and order will be made allowing its payment."

---

## Case No. 2,804.

### In re CLARK et al.

[The case reported under above title in 3 N. B. R. 487 (Quarto, 122), and in 1 Am. Law T. Rep. Bankr. 186, is the same as Case No. 1,-418.]

---

## Case No. 2,805.

### In re CLARK et al.

[4 N. B. R. 237 (Quarto, 70).][1]

District Court, S. D. New York. Nov. 7, 1870.

EXAMINATION OF BANKRUPT—RELEVANCY AND MATERIALITY OF EVIDENCE.

Where wife of a member of a bankrupt firm loaned the firm, previous to its bankruptcy, moneys arising from the sale of property which had been held in her husband's name, but the proceeds of which were promised to her in consideration of her executing a deed therefor, said moneys not appearing on the firm books to the credit of the wife, but to credit of her husband as a member of the firm, no separate account appearing in the husband's separate ac-

---

[1] [Reprinted by permission.]

count-books, except under the head of family expense—and where the husband purchased, as the agent of his wife in her absence from home, real estate, which was conveyed to her in her own name, and which real estate was improved by his wife through her husband, as her agent, and the implements paid for by firm checks, as in payment to her of her loans to the firm, this testimony being objected to, as immaterial and irrelevant, and given under and subject to such objections, and the question as to what estate said bankrupt's wife had, and had she any estate except the property above referred to, and was she possessed of thirty-seven thousand dollars, being also objected to, *held*, the questions must be answered.

[In the matter of Clark, West, Maxwell and Davis.]

I, Isaac Dayton, register in bankruptcy, having charge of these proceedings, and holding examination of E. Spencer West, one of the above-named bankrupts, under section 26 of the bankrupt act of 1867 [14 Stat. 529], hereby certify that in the course of said examination certain questions hereinafter stated at length, were refused to be answered by said E. Spencer West, and a certificate thereof and of the question so arising requested by him.

After testifying to the following effect: That his wife had loaned his firm money; don't know how much, or when; but at one time. in 1863, five or six hundred dollars; at another time, in 1864, about twenty-two thousand dollars; that this loan was a portion of the proceeds of the sale of a house which stood in his name, and which he promised to give to her in consideration of her executing the deed, and she was opposed to the sale of the property, and had hesitated to execute it without that assurance, and he did so give it to her; that this house cost eighteen thousand dollars and sold for thirty thousand five hundred dollars; that the money received for this was in check of the purchaser, payable to order of the bankrupt; that these were transferred to his firm. "Q. 410. What account did your firm keep with your wife as to this money (loan of five or six hundred dollars in 1863)? A. The firm of Clark, West & Co. had no account with my wife, and kept no account at any time, but the loan went into my own individual private expense account, as agreed in our copartnership between Clark and myself, that the expense account of either larger than the other should draw interest. Q. 428. Did you keep any account individually with your wife of this loan made by her, of the profits on the 34th street house and furniture? A. I kept no book-account, but we talked the matter over about what the amount was. Q. 429. Was any account kept by the firm of this amount? A. All money that passed this way through me was kept in my family expense account." That, in November, 1865, he heard by common report that land was for sale in 152d street; that his wife negotiated for this; was himself the party to the agreement, as his wife was away from home at the time it was drawn and executed. The price was sixteen

thousand dollars. That his wife made the necessary payments; three thousand dollars of the purchase-money was paid in checks either of himself or Clark, West & Co. Clark, West & Co. owed her that amount, they had been having the use of her money; the deed of the property is in the name of his wife, Mrs. Sarah O. West. That his wife built upon the property; that he acted as her agent in calling at various places to ascertain the price of materials, and after consultation about the price requested the material to be sent and delivered, and on presentation of the bill it would be paid for, and with various parties who were in the habit of performing certain portions of the work on the buildings, and that workmen they would employ would be paid on Saturday; don't know that he ever informed any one that he acted as agent, may have done so; that he did not hire any workmen. The bills were presented to his wife; he looked over the most of them; bills were paid by checks of Clark, West & Co. The checks which were so given were to return the loan made by his wife. The work was done by the day's work; no accounts or memorandums were kept of payments or amounts due. Don't know how much it cost to build. Had some receipts and some checks (returned from bank), but these are lost or destroyed. This property he thinks worth sixty or seventy thousand dollars, or more, perhaps, but there are three mortgages on it—one for twelve thousand dollars, one for twenty-five thousand dollars, and one for fifty thousand dollars. There are sixteen lots in all; there is a brick house, frame house, and stable upon them; don't think he would advise their sale for four thousand dollars per lot. When the first frame house was completed he removed into it, and has remained there ever since, and has not paid his wife any rent; the second house (brick) is for sale, applications to be made to bankrupt. Don't know how much firm owed Mrs. West at any time; don't know how much has been paid to his wife, or for her use; think she has been paid in full with interest. No account has been kept with Mrs. West in books of the firm, or in bankrupt's private books, nor any account with E. S. West in the books of the firm (except his general expense account and loan-book account) to show how much Mrs. West was creditor or debtor at any time.

(All the foregoing testimony relating to the property of the bankrupt's wife was objected to as immaterial and irrelevant, and the questions were answered subject to that objection.) "Q. 632. What estate has Mrs. Sarah O. West? (Objected to as irrelevant, and requested to be certified by counsel for bankrupt.) Q. 633. Is Mrs. S. O. West possessed of any estate except the property in 152d street? (Same objection and request.) Q. 634. Is Mrs. S. O. West possessed of thirty-seven thousand dollars?" (Same objection and request, which questions the bankrupt re-

quested to be certified to the judge for his opinion, which is hereby done.)

BLATCHFORD, District Judge. The questions must be answered. The clerk will certify this decision to the register, Isaac Dayton, Esq.

## Case No. 2,806.

### In re CLARK et al.

[5 N. B. R. 255.][1]

District Court, S. D. New York. April 25, 1871.

BANKRUPTCY—PROOF OF CLAIM BY SECURED CREDITOR.

Where a creditor who has ample security for his claim makes proof of the same, without mentioning the security, through inadvertence and ignorance of the law, an order will be entered granting to the said creditor leave to withdraw his proof and restoring to him his rights as though no proof had been filed.

[Cited in Re Hope Min. Co., Case No. 6,-681; Re Parkes, Id. 10,754; Re Baxter, 12 Fed. 75.]

[On certificate of I. T. Williams, Register:]

The undersigned register to whom the above entitled case is referred, respectfully reports and certifies to this honorable court: That John Byrne, by his attorney in fact, on the seventeenth day of January, eighteen hundred and seventy, made proof in due form of law, before me, of his claim against the estate of said bankrupts for the sum of six thousand seven hundred dollars, without making any reference to any security held therefor. That afterwards and on the thirtieth of March, eighteen hundred and seventy-one, the said John Byrne filed his petition before me which is hereto annexed, from which it appears that he has ample security for his claim, and that the proving thereof was made and filed through inadvertence or ignorance of his attorney of the fact that any security was held therefor, praying for leave to withdraw his said proof, and that he be restored to his rights in all things as if no such proof had been made or filed. That notice of the filing of said petition was given to the assignee in these proceedings who thereupon appeared before me and objected to the granting of the prayer of the said petition, on the ground that the said security had been by the making and filing of said proof waived, and that the estate had thereby assumed rights which he did not feel at liberty to relinquish. Whereupon I hereby certify the issue so framed to this court for decision. And I further certify and report that I am perfectly satisfied that the said proof was made and filed solely through inadvertence and in ignorance of the law, or of the facts of the case on the part of the said attorney who made the same, and that the said petitioner, had he known the facts and law, would not have made or filed the said

proof. Wherefore I recommend to this honorable court that an order be entered giving leave to said petitioner to withdraw his said proof, and that he be in all things restored to his rights as though no proof of claim had been made or filed.

BLATCHFORD, District Judge. An order to the effect recommended by the register should be entered.

## Case No. 2,807.

### In re CLARK et al.

[6 N. B. R. 194.][1]

District Court, S. D. New York. Nov. 11, 1871.

POWER OF REGISTER IN BANKRUPTCY — INFORMATION FROM ASSIGNEE—CALLING MEETINGS.

1. The register in charge has power to order an assignee to furnish him with all necessary information as to funds in his hands.

2. A third meeting of creditors—not being a final meeting—should not be called except for cause shown, and if the register be satisfied that no such cause exists, he is justified in refusing to grant the order for such a meeting.

[On certificate of I. T. Williams, Register:]

I, the undersigned register in charge of the above entitled proceedings, do hereby certify to this court, that I did, on the twenty-seventh day of October, eighteen hundred and seventy-one, receive from the assignee in this case a request to call a third meeting of creditors. That, as the said request did not state the reasons why such a request was made, I applied to the said assignee by letter, dated the thirty-first day of October, eighteen hundred and seventy-one, to call at my office and confer with me upon the subject of such application. That I received in reply thereto a letter from Messrs. Bangs, Sedgwick & North, "attorneys for the said assignee, pro hac vice," bearing date first November, eighteen hundred and seventy-one, which is herewith submitted. That, upon an examination of the accounts of said assignee on file in my office, I find, so far as I can understand the same, that no funds have been received since the last dividend meeting of the creditors held on the twenty-ninth day of March, eighteen hundred and seventy-one, at which meeting a dividend of six per cent. was duly declared and paid—save the sum of ninety-seven dollars and forty-one cents, which appears to be the amount of interest which has accrued upon the sum of eight thousand eight hundred and twenty-six dollars and seventy-six cents, which is now and was, as I understand, on deposit in the United States Trust Company at the time of the said last dividend meeting, and is not yet in a condition to be divided among the creditors. In doubt whether any further sums were in the hands of the said assignee and uncertain if the

[1] [Reprinted by permission.]

[1] [Reprinted by permission.]